IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE RILEY WILLIS, | § | |
| Plaintiff, | § § § | |
| V. | § | CIVIL ACTION NO. H-18-1495 |
| ANDREW SAUL[1], COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 9) and Defendant's Cross Motion for Summary Judgment (Document No. 10). Having considered the cross motions for summary judgment, each side's Response to the other's Motion for Summary Judgment (Document Nos. 11 & 12), the administrative record, the written decision of the Administrative Law Judge dated September 12, 2016, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration.

[2] On January 9, 2019, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 7.

## I. Introduction

Plaintiff Jane Riley Willis ("Willis") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits. Willis raises five points of error in this appeal: (1) "The ALJ committed reversible error in failing to make a finding as required by Medical Vocational Rule 201.00(f) when a plaintiff is 55 or more years of age, and transferability of skills to sedentary jobs is at issue;" (2) "The ALJ erred in making a strict, mechanical application of the Medical-Vocational Guidelines;" (3) "The ALJ violated Social Security Rule (SSR) 96-6p and erred in not obtaining an updated medical expert opinion concerning the issue of medical equivalence and RFC" which "constitutes the ALJ's failure to develop the case;" (4) "The ALJ's RFC is inconsistent with a finding of 'severe' mental impairments resulting in 'moderate limitations' in concentration, persistence and pace because the RFC does not contain the limitations normally associated with that level of impairment;" and (5) "The ALJ erred in failing to properly consider retrospective medical diagnoses and corroborating lay testimony in assessing plaintiff's impairments." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II. Procedural History

On or about June 10, 2014, Willis applied for disability insurance benefits, claiming that she was unable to work since March 26, 2011, as a result of a broken back and PTSD (post traumatic stress disorder). The Social Security Administration denied her application at the initial and

2

reconsideration stages. After that, Willis requested a hearing before an ALJ. The Social Security Administration granted her request and an ALJ, Susan J. Soddy, held a hearing on August 3, 2016, at which Willis' claims were considered *de novo*. (Tr. 32-66). On September 12, 2016, the ALJ issued her decision finding Willis not disabled. (Tr. 10-20).

Willis sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On April 13, 2018, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's September 12, 2016, decision thus became final. Willis seeks, with this proceeding filed pursuant to § 405g, judicial review of that final, adverse administrative decision.

The parties have filed cross motions for summary judgment (Document Nos. 9 & 10), which have been fully briefed and are ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the

3

pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

5

> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step one that Willis had not engaged in substantial gainful activity since March 26, 2011, her alleged onset date. The ALJ also determined that Willis was last insured for disability insurance benefits on December 31, 2011. As is not disputed, the time period under consideration was therefore, March 26, 2011, through December 31, 2011. At step two, the ALJ determined that Willis had the following severe impairments: fractured back status-post surgery, depression, and post-traumatic stress disorder. At step three, the ALJ determined that Willis did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 1.04, 12.04 and 12.06. Prior to consideration of steps four and five, the ALJ determined that Willis had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ropes, ladders or scaffolds. She is able to understand, remember and carry out complex instructions as found in skilled work. She can bend,

squat, stoop and crouch occasionally. She must be in a position that would allow her to stand in place for two minutes to stretch after every 30 minutes of sitting." Using that residual functional capacity assessment, the ALJ concluded, at step four, that Willis could not perform her past relevant work as a nurse or secretary. At step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, the ALJ determined that Willis could perform jobs such as information clerk, receptionist, and admissions clerk, and that she was, therefore, not disabled.

In this appeal, Willis maintains that the ALJ erred by not developing the record and seeking an updated medical opinion, erred in the RFC determination, and erred at stop five in considering whether she was disabled under the Medical Vocational rules. Having considered ALJ's decision alongside the medical evidence in the record, the Court concludes that there was no need for an updated medical opinion, that the ALJ's RFC determination is supported by substantial evidence, and the ALJ's consideration of the Medical Vocational Guidelines was not erroneous.

## V. Discussion

The medical evidence in the record is not extensive. It shows that Willis was, in 2006, in a house fire that claimed the life of her mother. Her PTSD has its genesis in that experience, and although Willis did not work much after 2006, she did not claim that she was disabled at that time. It was not until June 2014, that Willis filed an application for disability insurance benefits – over three years after she suffered a back fracture when a patio roof collapsed. That accident occurred on March 26, 2011. Willis was last insured for disability insurance benefits on December 31, 2011. It was, therefore, for the ALJ to determine at the administrative level whether Willis could be

7

considered disabled between March 26, 2011 and December 31, 2011. The ALJ's determination that Willis was not disabled as of December 31, 2011, is supported by substantial evidence in the record.

Wills fractured her back on March 26, 2011. All the diagnostic tests – x-rays, CT scans, and MRI's – revealed that she had L3 burst fracture. On March 28, 2011, Willis underwent an "L3 laminectomy, medial facetectomy and foraminotomies and L2-L4 posterior spinal fusion." (Tr. 319). At the time of her discharge on March 31, 2011, she was ambulating with assistance. At follow-up appointments with Dr. Karl Schmitt on April 14, 2011, and June 9, 2011, it was noted that Willis was doing well and was neurologically intact. (Tr. 446, 457). On July 28, 2011, Willis was also noted to be "doing quite well," even though there was some mild loss of height and loss of alignment. (Tr. 463). By August 11, 2011, however, when Dr. Schmitt began to taper off Willis' pain medications, Willis began to report a lot of pain and an inability to stand upright. (Tr. 465). By October 10, 2010, at her next follow-up appointment, she reported that she was experiencing a lot of pain in her lower back. X-rays revealed some lateral translation to the left side of the fracture at L3-4, which was characterized as "stable." (Tr. 472). Due to her ongoing pain, Dr. Schmitt raised with Willis the possibility of a "re-operation," which Willis declined because she was "neurologically intact." Dr. Schmitt then referred Willis to a pain management specialist. (Tr. 472). That pain management specialist, Dr. James Lai at Texas Pain Consultants, prescribed pain medication for Willis from October 28, 2011, though August 9, 2012. The only evaluative note in the records from Texas Pain Consultants is dated December 13, 2011, and describes the results of Willis' manual muscle test and range of motion exam, with Willis' lumbar range of motion ranging from 64% to 80% of normal (Tr. 403) approximately nine months after Willis' back surgery. A follow-up lumbar CT scan in and around that date, showed "no change in height or appearance of

the L2-L4 posterior fusion hardware. Minimal increase in leftward translation of lower lumbar spine relative to L2 . . . Fracture line remains evident at the anterosuperior margin of L2." (Tr. 479). This is all the medical evidence in the record relative to Willis' back fracture for the period between March 26, 2011 and December 31, 2011.

As for Willis' ongoing PTSD, it has been treated in and around that relevant time period by Dr. Milton Altschuler, a psychiatrist, with Willis being prescribed Pristiq for anxiety, Clonazepam for her mood, and Adderall to help her focus. (Tr. 392-399). During a hospitalization in April 2011, to remove an ovarian mass, which was found to be benign, Willis underwent a psychiatric evaluation. Dr. Allan Katz found Willis to be suffering from anxiety related to her hospitalization, diagnosed her with a moderate anxiety disorder, and assessed her a GAF of 70.[3] (353-356). A "Neuropsychological and Psychological Evaluation" conducted by Francisco L. Perez, Ph.D., on August 2011, revealed no neurological deficits, with Dr. Perez concluding that Willis had made a fairly good recovery from the trauma of the 2006 house fire with medication management, and recommending that Willis undergo weekly therapy. (Tr. 368-373).

It is within the context of this medical evidence that Willis' five claims in this appeal must be evaluated.

Willis' first two claims are related to the ALJ's consideration of the Medical Vocational

---

[3] The Global Assessment of Functioning ("GAF") is a measurement "with respect only to psychological, social and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition (DSM-IV), at 32). A GAF of 61-70 denotes "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition, Text Revision (DSM-IV-TR), at 34.

Guidelines. Her third, fourth and fifth claims relate primarily to the ALJ's RFC determination. As the ALJ's RFC determination preceded the ALJ's consideration of the Medical Vocational Guidelines at step five, Willis' third, fourth and fifth claims will be addressed first.

Willis maintains the ALJ erred by "not obtaining an updated medical opinion concerning the issue of medical equivalence and RFC," that the "ALJ's RFC is inconsistent with a finding of "severe" mental impairments resulting in "moderate limitations" in concentration, persistence and pace because the RFC does not contain the limitations normally associated with that level of impairment," and the "ALJ erred in failing to properly consider retrospective medical diagnoses and corroborating lay testimony in assessing plaintiff's impairments." Because the ALJ's RFC determination, both physical and mental, is supported by substantial evidence, and because nothing in the record indicated that an updated medical opinion was warranted, each of these claims on appeal fails.

The evidence in the record relative to Willis' back fracture consists primarily of the surgery she had in March 2011, and follow-up visits with Dr. Schmitt thereafter. As noted by the State agency physicians who reviewed these medical records and the few records that post-dated December 31, 2011, there was simply insufficient evidence prior to the date last insured to evaluate the claim. (Tr. 71, 72, 80, 82). Consulting with a medical expert during the administrative hearing would not have overcome this lack of evidence. As for Willis' claim that the ALJ should have considered retrospective diagnoses and corroborating lay testimony, Willis does not identify any retrospective diagnoses that would have supported an RFC of less than sedentary. As for lay witness testimony, the only such testimony in the record came from Willis herself, who was unable to clearly articulate her subjective symptoms on or around December 31, 2011. With respect to Willis'

argument that the ALJ's RFC does not logically account for her "severe" mental impairments of PTSD and depression, the undersigned cannot agree. The RFC took into account Willis' mental impairments when it limited her in her ability "to understand, remember and carry out detailed and simple instructions as found in semi-skilled and unskilled work, but [she] cannot understand, remember and carry out complex instructions as found in skilled work." (Tr. 14). This determination as to Willis' mental functioning is consistent with the findings of Dr. Perez, who conducted the Neuropsychological and Psychological evaluation in August 2011. Wills' third, fourth and fifth claims, which challenge the ALJ's RFC, are all rejected.

Willis' first two claims, related to the ALJ's consideration of the Medical Vocational Guidelines, also fail. The record shows that Willis was fifteen days shy of 55 years old on the date she was last insured (December 31, 2011). Under the Medical Vocational Guidelines, she, on the date she was last insured, fell into the category of "approaching advanced age (age 50-54)." In that category, and considering her RFC for a limited range of sedentary work, and the vocational expert's testimony about the transferability of skills, Willis was properly found not disabled. In addition, even giving Willis the benefit of a non-mechanical application of the age categories in the Medical Vocational Guidelines, Willis would still have also been found not disabled. Under the Medical Vocational Guidelines, for a person limited to sedentary work, who is either "approaching advanced age" (50-54) or "of advanced age" (55 and over), and who is high school graduate or more, the disability determination is based on whether the person's work experience was in skilled or semi-skilled work, and whether the skills obtained from that skilled or semi-skilled work were transferable. So, for a person of Willis' age (on the date she was last insured), her education level (high school graduate or more), and her past work as a nurse and secretary, both of which are

considered "skilled" positions, Rule 201.07 dictates a finding of "not disabled" given the ALJ's determination that Willis had transferable skills. Similarly, for a person 55 years of age or older, with Willis' education level (high school graduate or more), and her past work as a nurse and secretary, both of which are considered "skilled" positions, Rule 201.15 also dictates a finding of "not disabled" given the ALJ's determination that Willis had transferable skills.

This determination leads to consideration of Willis' final claim, that the ALJ did not make proper findings about the transferability of her skills, as required by Medical Vocational Rule 201.00(f). Rule 201.00(f) states:

> In order to find transferability of skills to skilled sedentary work for individuals whoa are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.

Here, the ALJ determined that Willis had transferable skills from her past work. Those findings about the transferability of Willis' skills is supported by the following testimony of the vocational expert at the hearing:

> Q: Would a person with background have acquired any skills that may be transferable to other light or sedentary or semi-skilled jobs with less than – with no more than minimal vocationally-relevant adjustment?
>
> A: Yes, your honor.
>
> Q: And what might they be?
>
> A: Service orientation, decision-making, coordination, monitoring, time management –
>
> Q: I hope you're getting these, because I can't write, okay, as fast. Go on.
>
> A: Excuse me, instructing, information gathering, record keeping, data entry.

(Tr. 60). The testimony from the vocational expert is substantial evidence to support the ALJ's determination that Willis was not, given her ability to utilize the skills she had acquired, disabled.

12

While Willis takes issue with the ALJ's failure to make specific findings that aligned with the language in Medical Vocational Rule 201.00(f), there is no authority that requires such precision. Moreover, even if the ALJ should have made specific reference to Medical Vocational Rule 201.00(f), her failure to do so was, given the vocational expert's testimony about the skills Willis acquired and would be transferable, harmless.[4]

VI. **Conclusion and Order**

Based on the foregoing, and the conclusion that the ALJ did not err in developing the record, in determining Willis' RFC, or in applying the Medical Vocational guidelines, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 9) is DENIED, and the decision of the Commissioner denying Jane Riley Willis' application for disability insurance benefits is AFFIRMED.

Signed at Houston, Texas, this 29th day of January, 2020.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

---

[4] An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits when it is inconceivable that a different administrative conclusion would have been reached absent the error.").